[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

Luis Enrique Cruz

RECEIVED

JUL 13 2022

THOMAS G BRUTON
CLERK, U.S DISTRICT COURT

(Enter above the full name
of the plaintiff or plaintiffs in
this action)

vs.

United States of America

Case No: 22 C 50117
(To be supplied by the Clerk of this Court)

(Enter above the full name of ALL
defendants in this action. Do not
use "et al.")

**CHECK ONE ONLY:**          **AMENDED COMPLAINT**

_____  **COMPLAINT UNDER THE CIVIL RIGHTS ACT, TITLE 42 SECTION 1983 U.S. Code** (state, county, or municipal defendants)

_____  **COMPLAINT UNDER THE CONSTITUTION ("BIVENS" ACTION), TITLE 28 SECTION 1331 U.S. Code** (federal defendants)

___✓___  **OTHER** (cite statute, if known) Federal Tort Claim Act (F.T.C.A.) Title 28 U.S.C. § 1346 (b)(1)

*BEFORE FILLING OUT THIS COMPLAINT, PLEASE REFER TO "INSTRUCTIONS FOR FILING." FOLLOW THESE INSTRUCTIONS CAREFULLY.*

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

I.    **Plaintiff(s):**

    A.    Name: __Luis Enrique Cruz__

    B.    List all aliases: __N/A__

    C.    Prisoner identification number: __60150-004__

    D.    Place of present confinement: __United States Penitentiary-Thomson__

    E.    Address: __P.O.BOX 1002; Thomson, IL. 61285__

(If there is more than one plaintiff, then each plaintiff must list his or her name, aliases, I.D. number, place of confinement, and current address according to the above format on a separate sheet of paper.)

II.    **Defendant(s):**
(In **A** below, place the full name of the first defendant in the first blank, his or her official position in the second blank, and his or her place of employment in the third blank. Space for two additional defendants is provided in **B** and **C**.)

    A.    Defendant: __United States of America__

        Title: _____

        Place of Employment: _____

    B.    Defendant: _____

        Title: _____

        Place of Employment: _____

    C.    Defendant: _____

        Title: _____

        Place of Employment: _____

(If you have more than three defendants, then all additional defendants must be listed according to the above format on a separate sheet of paper.)

Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

**III.** **List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court in the United States:**

A. Name of case and docket number: _____ N/A _____

_____

B. Approximate date of filing lawsuit: _____

C. List all plaintiffs (if you had co-plaintiffs), including any aliases: _____

_____

_____

_____

D. List all defendants: _____

_____

_____

_____

E. Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): _____

F. Name of judge to whom case was assigned: _____

_____

G. Basic claim made:_____

_____

_____

H. Disposition of this case (for example: Was the case dismissed? Was it appealed? Is it still pending?): _____

_____

_____

I. Approximate date of disposition: _____

**IF YOU HAVE FILED MORE THAN ONE LAWSUIT, THEN YOU MUST DESCRIBE THE ADDITIONAL LAWSUITS ON ANOTHER PIECE OF PAPER, USING THIS SAME FORMAT. REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE. CO-PLAINTIFFS MUST ALSO LIST ALL CASES THEY HAVE FILED.**

Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

**IV. Statement of Claim:**

State here as briefly as possible the facts of your case. Describe how each defendant is involved, including names, dates, and places. **Do not give any legal arguments or cite any cases or statutes.** If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. (Use as much space as you need. Attach extra sheets if necessary.)

<u>Complaint</u>

1.) My name is Luis Enrique Cruz. My Federal Bureau's of Prisons register number is 60150-004. I am currently housed at U.S.P.-Thomson, IL. facility since 12-16-20.

2.) This claim is being brought under the Federal Tort Claims Act. Therefore this court has original jurisdiction in this matter, under 28 U.S.C. § 1346 (b)(1). [Exhibit 1]

3.) Plaintiff contends that correctional officers employed by the United States Federal Government (Federal Bureau of Prisons) caused him personal injury while acting within the scope of their employment by their negligent, wrongful, or omissional failure to act.

4.) Plaintiff has completely exhausted the administrative exhaustion requirement. Specifically, Plaintiff filed a Standard Form 95

4

Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

notifying the proper federal agency, (See attached copy of Administrative Claim for Damages-Claim # : TRT-NCR-2022-00594. [Exhibit 2]) Accordingly the government's response to this claim was due on 3-23-2022. Under administrative law, a claimant may consider his claim denied once the deadline for the goverment's response has expired. In this matter, the government failed to respond, and the plaintiff has construed this as a denile of his claim. He has, therefore, exhausted his administrative requirements and this cause is ripe for prosecution.

5.) Under the "Standard of Employee Conduct", Federal Bureau of Prisons Program Statement #3420.11, Section 6, "Because failure to respond to an emergency may jeopardize the security of the institution, as well as the lives of staff and inmates, it is "Mandatory" that employees respond immediately, effectively, and appropriately during all emergency situations. [See Exhibit 3]

* Please read additional Attachments: Continuation of Complaint, Statement of FACTS, and Declaration of FACTS, Following. *

5 A

Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

# Continuation of Complaint

6.) Under the Federal Bureau of Prisons', "Use of Force" program Statement # 5566.06 (1), "The Federal Bureau of prisons authorizes immediate Use of Force to gain control of an inmate who appears to be dangerous because the inmate : (2) Assaults another inmate...." Thus, an inmate assault is an emergency situation. [See Exhibit 4].

7.) According to the administrative laws outlined in paragraphs 5 (Ex.4) and 6 (Ex.3) Government officials employed by the Federal Bureau of Prisons have a duty to act immediately with authorized Use of Force to stop/prevent one inmate from assaulting another. Therefore, F.B.O.P. employees who witness an inmate being attacked/assaulted and fail to respond immediately have breached this duty and violated the Standards of Employee Conduct for F.B.O.P. employees.

8.) Plaintiff avers that he was viciously attacked by three inmates, at the same time, on July 31, 2021 at approx. 8:30 p.m., in A-1 Unit in front of and in cell 02, at the U.S.P. Thomson facility.

9.) During the vicious attack on July 31, 2021 by these three inmates, Plaintiff received multiple physical injuries. [See Exhibit 5 (Medical Encounter)].

10.) Plaintiff claims that employees of the Federal Bureau of Prisons witnessed the attack on the Plaintiff and failed to respond to the attack, which caused the Plaintiff significant physical injury.

# Complaint

11.) My entire quality of life have been diminished because of this incident. For example, I suffer from Constant severe pain caused by the exacerbation of my neck injury in the assault. I can not sleep well at night. I also have Anxiety (Living in constant fear) and P.T.S.D. (Paranoia) causing extreme Mental Anguish, all from the incident and atmosphere that staff misconduct has created here at U.S.P.-Thomson.

12.) The significant and prevalent negligent, abusive, and felonious conduct of Federal Officers employed at U.S.P.-Thomson has recently came to light amid a Congressional Inquiry Caused by numerous articles published which describe the brutal, torturious, negligent, and indifferent actions of U.S.P.-Thomson staff.

13.) I submit a letter that Congress sent to the Department of Justice, Inspector General Michael Horowitz on June 1, 2022. This letter outlines the egregious and criminal conduct being committed by U.S.P.-Thomson staff and bolsters my claims of staff misconduct and the extremely dangerous enviromental conditions where staff are not only failing to protect inmates but also actively inciting violence between them; thus, causing me extreme, severe, prolonged and continuous mental anguish and distress. [See Exhibit 6 (Illinois representatives call for Federal investigation into incidents, allegations at Thomson prison)].

5c

## Statement of Facts

1.) On July 31, 2021, at approximately 8:30 p.m., in Alpha 1 unit at Thomson U.S.P., I was assaulted and attacked by 3 inmates.

2.) This assault happened in front of and inside of cell #102

3.) During this assault, both Correctional officers Cox and an unknown male correctional officer were present in Alpha 1 unit.

4.) Cell #102 is within clear view of the Alpha 1 Unit's Correctional officers' office and the view is unobstructed by any structual design.

5.) Under F.B.O.P. policy, Correctional Officers assigned to custody detail and working within an inmate housing unit have a duty to visually monitor the inmate population for possible threats, criminal conduct, and emergency situations.

6.) The A-1 unit Camera Surveillance footage will clearly show that the above mentioned assault/attack happened within clear view of F.B.O.P. employee's officers Cox and the Unknown Correctional Officer.

7.) This same camera footage will clearly show that the same unit officers were clearly aware of the emergency situation (assault/attack) and failed to intervene, or respond at all. They simply stood by and watched as I was assaulted and attacked by 3 inmates.

8.) F.B.O.P. employees have a mandatory duty to respond immediately to emergency situations such as inmate assaults [See Exhibit #4]. Both F.B.O.P. Officers Cox and the Unknown Correctional Officer failed to respond and/or intervene, and

5 D

## Statement of Facts

stood by and watched as 3 inmates assaulted/attacked me. Moreover, I was personally injured in assault/attack and received both physical and mental damages [See Exhibit #5] Because F.B.O.P. officers failed to respond to the assault/attack and because I recewed significant personal injury as a direct proximate cause of their failure to respond, they are guilty of the Tort of Negligence.

9.) I recewed injuries to the following area of my body: head (temple area), face (bloody nose and bruised eye), and leg (deep lacerations). [See Exibit #5].

5E

## Declaration of Facts

I, Luis Enrique Cruz, hereby solemnly swear that the facts contained within this Declaration of Facts are True and Correct to the best of my knowledge.

On July 31, 2022 at approximately 8:30 pm in Unit A1 infront of and in cell 02 at U.S.P.-Thomson, ILLinois, I was assaulted by 3 inmates as both unit officers Cox and Unknown Officer, which were aware of the ongoing incident, did nothing to stop it. As I was struggling to leave the room I heard some one say (that some one was one of my assailents), "she is looking, she is right there." Officer Cox and Unknown Correctional officer were just standing there watching even though it was apparent that I was being assaulted and needed help. I was finally able to push my way out of the room and release myself. I walked away battered, bloody and confused as I wondered why staff would not intervene and stop this. I looked for help but was instead thrown a shirt by inmates and told to change so I would not get the unit in trouble or locked down. This whole time Unit Officer Cox and Unknown Officer just watched. When I finally got to my cell I had to repeatedly ask for help from both Unit Officer Cox and Unknown Officer for my visually apparent and obvious injuries (my leg was bleeding profusely and my head hurt and was very dizzy), and yet they were reluctant. Finally a different Unknown officer came to my door and called for help. Then, as I was being escorted to medical for an assesment Lieutenant Dix arrived to meet

5 F

us on the walk way and asked me, "what happened," to which I said, "I was assaulted in cell 102." He then says to accompanying staff, "This is what we are going to say, 'That it was an unobserved fight.'" Even though both unit officers clearly observed the fight and I had just told LT. DIX about the assault that had just happened. Also there was no subsequent action taken against those who assaulted me, by neither LT. DIX, S.I.A. Ramirez, or any other staff member. S.I.A. Ramirez investigated my incident at B.O.P. level here at U.S.P.-Thomson. In fact, U.S.P.-Thomson staff actively covered-up incident by falsifying official government documents. I received deep lacerations to my right leg and lumps and bruises to face and neck w/ bloody nose. I have continual, worsening neck pain as I have a pre-existing injury to neck. A previous injury to neck and accompanying muscle spasms of upper left torso and neck are well documented in Medical Records. [See Exhibit 7] This incident has exacerbated my condition. These officer's failure to intervene and protect constituted the Tort of Negligence resulting in unnecessary pain, suffering, injury, and emotional distress.

5 G

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

V.    **Relief:**

State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.

I ask that Camera footage and Reports of Incident be reviewed and investigated and that Compensatory Damages in amount of $150,000.00 for injury, pain and suffering, and Emotional distress and all court cost and Filing Fees be paid.

VI.    The plaintiff demands that the case be tried by a jury.    ☐ YES    ☒ NO

### CERTIFICATION

By signing this Complaint, I certify that the facts stated in this Complaint are true to the best of my knowledge, information and belief. I understand that if this certification is not correct, I may be subject to sanctions by the Court.

Signed this ___7___ day of __July__, 20_22_

_Luis E. Cruz_
(Signature of plaintiff or plaintiffs)

_Luis E. Cruz_
(Print name)

_60150-004_
(I.D. Number)
_U.S.P.-THOMSON_

_P.O. BOX 1002_

_Thomson, IL. 61285_
(Address)

6                                              Revised 9/2007
[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Exhibit 1

Case: 3:22-cv-50117 Document #: 9 Filed: 08/12/22 Page 13 of 38 PageID #:72

# TITLE 28. JUDICIARY AND JUDICIAL PROCEDURE

## Part IV. JURISDICTION AND VENUE

## CHAPTER 85. DISTRICT COURTS; JURISDICTION

### § 1346. United States as defendant

(a) The district courts shall have original jurisdiction, concurrent with the United States Claims Court [United States Court of Federal Claims], of:

(1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws;

(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort, except that the district courts shall not have jurisdiction of any civil action or claim against the United States founded upon any express or implied contract with the United States or for liquidated or unliquidated damages in cases not sounding in tort which are subject to sections 7104(b)(1) and 7107(a)(1) of title 41. For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration shall be considered an express or implied contract with the United States.

(b) (1) Subject to the provisions of chapter 171 of this title [28 USCS §§ 2671 et seq.], the district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or

USCS                                        1

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

7B

employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

(2) No person convicted of a felony who is incarcerated while awaiting sentencing or while serving a sentence may bring a civil action against the United States or an agency, officer, or employee of the Government, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of title 18).

(c) The jurisdiction conferred by this section includes jurisdiction of any set-off, counterclaim, or other claim or demand whatever on the part of the United States against any plaintiff commencing an action under this section.

(d) The district courts shall not have jurisdiction under this section of any civil action or claim for a pension.

(e) The district courts shall have original jurisdiction of any civil action against the United States provided in section 6226, 6228(a), 7426, or 7428 [28 USCS § 6226, 6228(a), 7426, or 7428] (in the case of the United States district court for the District of Columbia) or section 7429 of the Internal Revenue Code of 1954 [26 USCS §§ 6226, 6228(a), 7426, 7428, 7429].

(f) The district courts shall have exclusive original jurisdiction of civil actions under section 2409a [28 USCS § 2409a] to quiet title to an estate or interest in real property in which an interest is claimed by the United States.

(g) Subject to the provisions of chapter 179 [28 USCS §§ 3901 et seq.], the district courts of the United States shall have exclusive jurisdiction over any civil action commenced under section 453(2) of title 3, by a covered employee under chapter 5 of such title [3 USCS §§ 401 et seq].

USCS                                           2

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

7c

60150004

Exhibit 2

8



**U.S. Department of Justice**
Federal Bureau of Prisons

_North Central Regional Office_

_Office of the Regional Counsel_                    _400 State Avenue_
_Tower II, Suite 800_
_Kansas City, KS 66101_

10-29-2021

LUIS CRUZ, #60150-004
USP THOMSON
P.O. BOX 1002
THOMSON, IL 61285

      Re: Administrative Claim for Damages
      Claim #:      TRT-NCR-2022-00594      $ 150,000.00

Dear Claimant:

      This is to notify you of our receipt of your administrative claim for damages under provisions of the <u>Federal Tort Claims Act, Title 28 USC §1346(b), 2671 et. seq.</u>, alleging liability of the United States Government.

      Your claim was received on 09-24-2021. The above referenced Act provides that the agency has 6 months to make an administrative determination on your claim from the date such claim was received by the appropriate agency. Accordingly, in the matter of the above referenced claim, the government's response is not due until 03-23-2022.

      Regulations that may be pertinent to your claim may be found at Title 28 C.F.R. Part 14 et.seq., and §543.30.

                  Sincerely,
                  Richard M. Winter
                  Regional Counsel

8 B

# TITLE 28. JUDICIARY AND JUDICIAL PROCEDURE

## Part VI. PARTICULAR PROCEEDINGS

## CHAPTER 171. TORT CLAIMS PROCEDURE

### § 2675. Disposition by federal agency as prerequisite; evidence

(a) An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section. The provisions of this subsection shall not apply to such claims as may be asserted under the Federal Rules of Civil Procedure by third party complaint, cross-claim, or counterclaim.

(b) Action under this section shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency, except where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim.

(c) Disposition of any claim by the Attorney General or other head of a federal agency shall not be competent evidence of liability or amount of damages.

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

60150004

8c

Exhibit 3

9

| | |
|---|---|
| **OPI:** | **OGC/ELE** |
| **NUMBER:** | **3420.11** |
| **DATE:** | **12/6/2013** |
| **SUBJECT:** | **Standards of Employee Conduct** |



**U.S. Department of Justice**

Federal Bureau of Prisons

# Program
# Statement

OPI:  OGC/ELE

NUMBER:  3420.11

DATE:  12/6/2013

SUBJECT:  Standards of Employee Conduct

## 1. PURPOSE AND SCOPE

To provide policies and procedures, referred to as the "Standards of Conduct," to complement those issued by the Office of Government Ethics on:

Employee conduct and responsibility.

These standards apply to all employees of the Bureau of Prisons (Bureau), including employees of the Public Health Service and the National Institute of Corrections, and to any person detailed to any of those agencies under the Intergovernmental Personnel Act.

proj

**1**

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

9B

60150004

## 6. **RESPONSIVENESS**

Inattention to duty in a correctional environment can result in escapes, assaults, and other incidents. Employees are required to remain fully alert and attentive during duty hours.

Because failure to respond to an emergency may jeopardize the security of the institution, as well as the lives of staff or inmates, it is mandatory that employees respond immediately, effectively, and appropriately during all emergency situations.

Employees are to obey the orders of their superiors at all times. In an emergency situation, carrying out the orders of those in command is imperative to ensure the security of the institution.

proj

**2**

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

9c

60150004

Exhibit 4

10

| | |
|---|---|
| **OPI:** | **CPD/CPB** |
| **NUMBER:** | **5566.06**, CN-1 |
| **DATE:** | 8/29/14 |
| **SUBJECT:** | **Use of Force and Application of Restraints** |



**U.S. Department of Justice**

Federal Bureau of Prisons

# Program Statement

OPI:   CPD/CPB

NUMBER:   **5566.06**, CN-1

DATE:   August 29, 2014

# Use of Force and Application of Restraints

**SUBJECT:**   Use of Force and Application of Restraints

1.   [**PURPOSE AND SCOPE** §552.20.   The Bureau of Prisons authorizes staff to use force only as a last alternative after all other reasonable efforts to resolve a situation have failed. When authorized, staff must use only that amount of force necessary to gain control of the inmate, to protect and ensure the safety of inmates, staff and others, to prevent serious

pro

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

10B

60150004

property damage,

and to ensure institution security and good order. Staff are authorized to apply physical restraints necessary to gain control of an inmate who appears to be dangerous because the inmate:

a.    Assaults another individual; b.    Destroys government property; c.    Attempts suicide;

d.    Inflicts injury upon self; or

e.    Becomes violent or displays signs of imminent violence.

2.    **PROGRAM OBJECTIVES**. The expected results of this program are:

   h.    Staff will be trained in confrontation avoidance, use of force team technique, use of chemical agents, and application of restraints.

5.    [**TYPES OF FORCE** §552.21.]    Since inmates occasionally become violent or display signs of imminent violence, it is sometimes necessary for staff to use force and restraints to prevent them from hurting themselves, staff, or others, and/or from destroying property.

   [a.    **Immediate Use of Force.    Staff may immediately use force and/or apply restraints when the behavior described in §552.20 constitutes an immediate, serious threat to the inmate, staff, others, property, or to institution security and good order.**]

   In an immediate use of force situation, staff may respond with or without the presence or direction of a supervisor.

pro

**2**

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

10c

60150004

Exhibit 5

# Bureau of Prisons
# Health Services
# Clinical Encounter

| | | |
|---|---|---|
| Inmate Name: CRUZ, LUIS ENRIQUE | | Reg #: 60150-004 |
| Date of Birth: 05/01/1977 | Sex: M  Race: WHITE | Facility: TOM |
| Encounter Date: 07/31/2021 22:10 | Provider: Horst, C. RN | Unit: Z02 |

Injury Assessment - Non-work related encounter performed at Health Services.

**SUBJECTIVE:**

**INJURY  1**      **Provider:**  Horst, C. RN

**Date of Injury:**   07/31/2021 17:30      **Date Reported for Treatment:**   07/31/2021 22:09

**Work Related:**   No      **Work Assignment:**   AM REC

**Pain Location:**

Pain Scale:   6

Pain Qualities:   Aching

**Where Did Injury Happen (Be specific as to location):**

In Alpha unit  Range 1

**Cause of Injury (Inmate's Statement of how injury occurred):**

Fight with another inmate

**Symptoms (as reported by inmate):**

Inmate states, "My jaw hurts, my tempo hurts, my nose hurts, my eye hurts".

**OBJECTIVE:**

**Pulse:**

| Date | Time | Rate Per Minute | Location | Rhythm | Provider |
|---|---|---|---|---|---|
| 07/31/2021 | 22:10 | 59 | | | Horst, C. RN |

**Respirations:**

| Date | Time | Rate Per Minute | Provider |
|---|---|---|---|
| 07/31/2021 | 22:10 TOM | 16 | Horst, C. RN |

**Blood Pressure:**

| Date | Time | Value | Location | Position | Cuff Size | Provider |
|---|---|---|---|---|---|---|
| 07/31/2021 | 22:10 TOM | 121/66 | | | | Horst, C. RN |

**SaO2:**

| Date | Time | Value(%) | Air | Provider |
|---|---|---|---|---|
| 07/31/2021 | 22:10 TOM | 94 | Room Air | Horst, C. RN |

**ASSESSMENT:**

Cut(s) and/or Abrasion(s)

Inmate was escorted into medical by custody.  Inmate's gait was steady and was able to get self up onto the exam table. Inmate states, "My jaw hurts, my nose hurts, my eye hurts, and my tempo hurts".  Upon assessment it is noted that inmate has red-purple discoloration3 x 3 cm to left side of head near eye.  No edema is noted.  Inmate has 1 x 1 cm reddish discoloration to upper center of nose.  Has small red discoloration to lateral aspect of left eye. PERRLA noted. Has small amount of edema noted to inner aspect of upper right lip.  No skin tear noted.  Oral mucosa intact and is able to open his jaw wide for inspection as well as his tongue which is midline.  Inmate has 2 small 0.5 cm cuts to center part of  frontal right lower leg.  Area cleansed with wound cleanser and applied TAO and bandaid.  Inmate speech appropriate, articulate and is oriented.  No other skin issues noted to chest, back, arms, or knuckles.  No other medical treatment is necessary at this time.

11B

| Inmate Name: | CRUZ, LUIS ENRIQUE | | | | Reg #: | 60150-004 |
|---|---|---|---|---|---|---|
| Date of Birth: | 05/01/1977 | Sex: | M | Race: WHITE | Facility: | TOM |
| Encounter Date: | 07/31/2021 22:10 | Provider: | Horst, C. RN | | Unit: | Z02 |

**PLAN:**

**Disposition:**

Follow-up at Sick Call as Needed

Injury level 2

**Other:**

Patient allergies reviewed and updates applied during this visit if indicated. See Chart: Allergies for most recent patient allergy list.

**Patient Education Topics:**

| Date Initiated | Format | Handout/Topic | Provider | Outcome |
|---|---|---|---|---|
| 07/31/2021 | Counseling | Access to Care | Horst, C. | Verbalizes Understanding |
| 07/31/2021 | Counseling | Plan of Care | Horst, C. | Verbalizes Understanding |

**Copay Required:** No          **Cosign Required:** Yes

**Telephone/Verbal Order:** No

Completed by Horst, C. RN on 07/31/2021 22:25

Requested to be cosigned by Fateh Hyder, Syed (MAT) Regional Medical Director/NCRO.

Cosign documentation will be displayed on the following page.

11c

## Bureau of Prisons
## Health Services
## Cosign/Review

| | | | | | | |
|---|---|---|---|---|---|---|
| Inmate Name: | CRUZ, LUIS ENRIQUE | | | Reg #: | 60150-004 | |
| Date of Birth: | 05/01/1977 | Sex: | M | Race: | WHITE | |
| Encounter Date: | 07/31/2021 22:10 | Provider: | Horst, C. RN | Facility: | TOM | |

**Cosigned by Fateh Hyder, Syed (MAT) Regional Medical Director/NCRO on 08/01/2021 13:00.**

11 D

Exhibit 6

12

4 Weather Alerts In Effect                                                                           ✕

ADVERTISEMENT

▷ ✕

# Illinois representatives call for federal investigation into incidents, allegations at Thomson prison

By KWQC Staff
*Published: Jun. 2, 2022 at 3:19 PM EDT*
🅕 ✉ 🅨 🅟 in

WASHINGTON D.C. (KWQC) - Illinois lawmakers have written a letter to the Justice Department's Inspector General, calling for an immediate federal investigation into inmate deaths and allegations of staff abuse at United States Penitentiary Thomson.

U.S. Senate Majority Whip Dick Durbin, D-Ill., chair of the Senate Judiciary Committee and lead co-sponsor of the "First Step Act," U.S. Sen. Tammy Duckworth, D-Ill.; and U.S. Rep. Cheri Bustos, D-Ill.-17, all wrote a letter to the Department of Justice.

In the letter, the lawmakers cited a report published by NPR and The Marshall Project which detailed the deaths of seven incarcerated men and allegations of abuses by staff at the prison.

12 B

☰  News  Weather  Sports  Livestream  Hometown Hero ⌕

Some of the more serious allegations in the report include encouraging assaults against sex offenders, leaving men shackled to a bed in their own waste without food or water and staff purposefully encouraging tensions between cellmates.

On Thursday, Durbin announced the Senate Judiciary Committee will soon hold a hearing on the continued overuse of solitary confinement and restricted housing in federal prisons such as the Thomson prison.

About 7.8% of Bureau of Prisons inmates are in a form of restricted housing, Durbin said.

Durbin, Duckworth and Bustos have also addressed the staffing issues at USP Thomson and at other federal prisons across the U.S.

ADVERTISEMENT

In response to the letter, AFGE LOCAL 4070 President Jon Zumkehr with USP Thomson said, "We cannot comment on an ongoing investigation, but we have been fighting to fully staff USP Thomson."

"We are currently short 105 staff members, including 78 from custody. We are committed to fully staff USP Thomson and we have hosted monthly job fairs to bring new staff to USP Thomson."

**Read the full letter from the lawmakers below.**

*June 1, 2022*

*Dear Inspector General Horowitz:*

*We respectfully request that your office immediately open an investigation into allegations included in a disturbing report published by NPR and the Marshall Project[1] concerning the deaths of seven incarcerated men and serious abuses by staff at the United States Penitentiary Thomson (USP Thomson) in Illinois.*

*Five of the deaths were reportedly the result of homicides by fellow Special Management Unit (SMU) residents; the remaining two were suicides. The article's most serious allegations include:*

- *Staff purposefully stoking tensions between cellmates and intentionally pairing men whom they knew would attack each other;*
- *Staff encouraging assaults against sex offenders and informants and falsely telling residents that a particular man was a sex offender, resulting in repeated physical and sexual assaults against him;*
- *Abusive shackling leaving scars known as "the Thomson tattoo," sometimes in a room known as "the dungeon" or "the torture room," where men would lie shackled to a bed for hours in their own urine and feces without food or water;*
- *The continuation of abusive behavior towards incarcerated persons after the SMU was transferred to USP Thomson;*
- *Punishment (often by shackling) of men who refused to be housed with cellmates whom they believed would kill them;*
- *The highest rate of pepper-spray usage in the Bureau of Prisons (BOP); and*
- *Staff laughing and joking at the expense of a Jewish man they were guarding as he lay dying in a hospital following an assault that occurred after staff placed him in a recreation cage with known white supremacists.*

*If these reports prove accurate, they describe conduct that would almost certainly contravene numerous BOP policies, as well as infringing the civil rights of individuals in BOP custody and possibly violating federal criminal statutes.*

*The Office of the Inspector General (OIG) is responsible for protecting the integrity of Department of Justice components, including BOP, as well as the health and safety of the people in BOP custody. The NPR and Marshall Project report raises serious and troubling allegations about the conduct of staff at USP Thomson.*

*As such, it is imperative that you investigate the allegations detailed in the NPR and Marshall Project report, as well as any other allegations of abusive or dangerous conditions at USP Thomson that arise in the course of your investigation. In particular, we request that your investigation include the role that staffing shortages may have played in giving rise to the conditions in which the deaths and alleged abuses occurred. We have long fought to address the staffing crisis at USP Thomson and throughout BOP, repeatedly warning that failure to do so could result in catastrophe. We are deeply troubled that these warnings seem to have proved accurate.*

*Thank you for your consideration of this request. We look forward to your prompt response.*

12c

Exhibit 7

13

"PRe-existing condition"

# Luis Cruz

#60150-004

| | 1/29/2020 09:00 | Initial consult |
| --- | --- | --- |

MRN: 02846053

Description: Male DOB: 5/1/1977  Provider: Brittany N Cox, PA-C  Department: Neurosurg Sur Svc Emp

## ✍ Diagnoses

Neck pain - Primary
  Codes: ICD-9-CM: 723.1
  ICD-10 CM: M54.2
Cervical paraspinal muscle spasm
  Codes: ICD-9-CM: 728.85
  ICD-10-CM: M62.838
Trapezius muscle spasm
  Codes: ICD-9-CM: 728.85
  ICD-10-CM: M62.838
Shoulder injury, unspecified laterality, initial encounter
  Codes: ICD-9-CM: 959.2
  ICD-10-CM: S49.90XA

## 👤 Reason for Visit

Advice Only    neck pain radiating toward upper ext

USP ATWATER

USP ATWATER

## Progress Notes

Cox, Brittany N, PA-C at 1/29/2020 09:00

Status: Signed
  See H+P

## H&P Notes

| Author | Status | Last Editor | Updated | Created |
| --- | --- | --- | --- | --- |
| Cox, Brittany N, PA-C | Signed | Cox, Brittany N, PA-C | 1/29/2020 10:39 | 1/29/2020 09:52 |

**Chief Complaint**

Patient presents with
• Advice Only
  neck pain radiating toward upper ext

Patient is a 42 y.o. male  here with complaints of neck pain.  Patient was referred by local prison
 Patient states overall  he is doing okay.
Onset of symptoms 10 + years, gradually worsening since that time.
Event that precipitate these symptoms: none known.
Currently pain Rated :6/10
Pain is located midline neck and left side of neck radiates into left shoulder
Pt also complains of intermittent numbness and tingling to left arm with activity.
Feels weakness in deltoid and lifting left arm. Has a history of clavicle, jaw and shoulder injury with repair rule out b/l supraspinous muscle in the past. Has had follow up with ortho and told healed well.
Symptoms worse with: activity, pulling, lifting
Symptoms improve with- nothing in particular, constant sharp stabbing pain

13B

Previous treatments include: physical therapy- has ben many years, medication: NSAID: Naproxen 500mg BID- doesn't help, Neurontin- didn't help, had to stop d/t side effects of lightheaded and weakness. Believes had a trigger point injection in the past that helped for a period. , ..

Denies/Admits to PMH or FH of MS ,ALS, RA or autoimmune diseases
Denies/Admits to tobacco use
diabetes mellitus: none/controlled/uncontrolled

PMH:
Jaw injury
Left clavicle fracture
B/L supraspinatus tear

social history:
B/l supraspinatus tear repair
Jaw surgery

social history: Incarcerated
Works out routinely

Review of systems:
As above in history of present illness past medical history otherwise 10 point systems negative

Physical Exam:
Vitals:

|        | 01/29/20 0936       |
|--------|---------------------|
| BP:    | 110/72              |
| Pulse: | 63                  |
| Temp:  | 36.6 °C (97.9 °F)   |

General: No acute distress, sitting in a chair comfortably, awake and alert, Oriented x3.
HEENT: Head is normocephalic atraumatic,  No scleral icterus, no strabismus, Face is symmetrical,
neck:  supple, Non tender to palpation. ROM: full active, severe muscle spasm appreciated Left trapezius and paraspinal muscles, mild on right. buccal mucosa pink and moist
Cardiovascular:  no edema noted in extremities.
Respiratory: Respiratory rate regular, non labored breathing,
Motor/neuro:
 muscle tone- normal, No  atrophy noted in UE b/l
muscle  Strength: 5 out of 5 in b/l extremities with exception of shoulder at deltoid flexion and internal rotation 4/5 with pain on internal rotation and overhead flexion- good ROM of left shoulder. Hoffman's Negative
Skin: Warm and dry
Psych: mood is appropriate,Speech is clear and concise

13c

Cruz, Luis (MR # 02846053) DOB: 05/01/1977   Encounter Date: 01/29/2020

Images:



Reviewed outside facility MRI cervical spine dated 11/21/2019; Noted mild DDD changes of the cervical spine without significant central or foraminal stenosis. Mild HNP at C3-4 which encroaches but does not efface or impinge Left Nerve root. C5-6 and C6-7 disc displacement without stenosis. Straightening of cervical lordosis consistent with muscle spasm



Assessment:

|   |   | ICD-9-CM | ICD-10-CM |
|---|---|---|---|
| 1. | Neck pain | 723.1 | M54.2 |
| 2. | Cervical paraspinal muscle spasm | 728.85 | M62.838 |
| 3. | Trapezius muscle spasm | 728.85 | M62.838 |
| 4. | Shoulder injury, unspecified laterality, initial encounter | 959.2 | S49.90XA |

P:

Reviewed imaging results and diagnosis with pt. Dr. Deis also present today. No noted nerve impingement noted on imaging. No surgical intervention recommended.
Recommend intense PT for muscle spasm to include massage, heat/cold, electrotherapy, etc.
Recommend muscle relaxants Robaxin 500 mg TID as needed for muscle spasm
Trigger point injections also recommended for severe muscle spasm q 3 months x3 as needed for muscle spasm. Advised pt once the muscle relaxes must continue to do PT excercises on own to avoid re-spasm
Continue Naproxen as needed
Follow up with PMD

Allergies as of 1/29/2020            Fully Reviewed by Duarte, Reinaldo, MA on 1/29/2020

No Known Allergies

Med Review Info

Duarte, Reinaldo, MA on 1/29/2020 at 09:36

History

Not marked as reviewed during this visit.

| Custom History | |
|---|---|
| | None |

| Custom History | |
|---|---|
| | None |

13 D



Luis Cruz #60150-004
United States Penitentiary -Thomso
P.O. BOX 1002
Thomson, IL. 61285

CERTIFIED MAIL

7021 0950 0000 5580 2176

RECEIVED
JUL 1 3 2022
U.S. MARSHAL

"Legal Mail"

OFFICE OF THE CLERK
of The U.S. District Court
United States Courthouse
327 S.Church st  Rockford, ILLINOIS 61101



ruz #60150-004
ates Penitentiary-Thomso
02
,IL. 61285

7021 0950 0000 5580 2176

"egal Mail"

327 S.Churchst

OFFICE OF THE CLERK
of The U.S. District Court
United States Courthouse
Rockford, ILLINOIS 61101

RECEIVED
JUL 13 2022
U.S. MARSHALS

U.S. POSTAGE PAID
FCM LG ENV
THOMSON, IL
61285
JUL 11, 22
AMOUNT
$0.00
R2304M113370-05

61101

**AUSP Thomson**

**JUL 1 1 2022**

Received in CSD

FEDERAL BUREAU OF PRISONS
P.O.

The enclosed letter was processed on _____ through special
mailing procedures. The letter has neither been opened nor
inspected. If the writer raises a question or problem over which
this facility has jurisdiction, you may wish to return the material
for further information or clarification. If the writer enclosed
correspondence for forwarding to another addressee, please
return the enclosed materials to the above address.